**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                          No. 97-4485

OKECHUKWU PAUL NDIBE,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-96-426-AW)

Submitted: February 24, 1998

Decided: September 1, 1998

Before WIDENER, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Harry D. McKnett, Columbia, Maryland, for Appellant. Lynne A.
Battaglia, United States Attorney, David I. Salem, Assistant United
States Attorney, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Okechukwu Paul Ndibe was convicted by a jury of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 (1994). He appeals his eighteen-month sentence, contending that the district court erred in calculating the amount of loss attributable to him under USSG § 2F1.1.**1** Finding no clear error, we affirm.

I.

Ndibe came to the United States from Nigeria, moved into an apartment with Charles C. Bosah, and became involved in a scheme to defraud mail order merchandise companies, including Columbia House, BMG Music, and two book clubs. Ndibe opened post office boxes in fictitious names and mailed membership applications in various names to the companies to take advantage of the companies' promotional marketing offers. When Ndibe received the compact disks after paying only for shipping and handling, he gave the disks to Bosah, who sold them in Nigeria and shared the proceeds with Ndibe.

After the jury verdict, the probation officer prepared a presentence report and recommended a base offense level of six under USSG § 2F1.1(a), a two-level increase for more than minimal planning under USSG § 2F1.1(b)(2), and a six-level enhancement under USSG § 2F1.1(b)(1)(G) based on an estimated loss of $108,000, for a total offense level of fourteen. With a criminal history category of I, the applicable guideline range was fifteen to twenty-one months.

At the sentencing hearing, Ndibe objected to the total amount of the loss because the probation officer included proceeds from Bosah's trips to Nigeria that occurred before Ndibe moved into the apartment and became involved in the conspiracy. Ndibe also objected to the $15 per item value used to calculate the amount of the loss, arguing that the amount of the loss should be measured by the amount of money the companies expected to make on the promotions. Because

_____

**1** U.S. SENTENCING G UIDELINES MANUAL (1995).

customers could obtain as many as sixteen compact disks for the price of one, Ndibe contended that the government's loss figures were inflated by a factor of sixteen.

Testimony at the hearing disclosed that officers executed a search warrant at the apartment and discovered approximately 1600 compact disks and 1800 books. Based on information from the merchandise companies about the price at which regular club members purchase disks and books--BMG Music, $15 per disk; Columbia House, $15.98 per disk; the book clubs, a range of $12 to $21 per book, with an average price of $15.03--the probation officer rounded the per item amount to $15 and multiplied that amount by 3400 disks and books, for a total of $51,000. The court accepted as reasonable the $51,000 figure and added $6600--the amount of proceeds from one of Bosah's trips to Nigeria after Ndibe became involved in the fraudulent scheme. The $57,600 loss established by the court resulted in a five-level (rather than the recommended six-level) enhancement, for a total offense level of thirteen. The court sentenced Ndibe to an eighteen-month term of incarceration, the maximum authorized under the applicable guideline range, and imposed a three-year term of supervised release. Ndibe timely appeals.

II.

On appeal, Ndibe contends that the district court improperly used a hypothetical retail market rather than the actual mail order market in which the goods were sold to establish the value of the books and compact disks. Because club members in the mail order discount market could buy sixteen compact disks for about $15, Ndibe contends that the fair market value of the goods was about $1 each. Therefore, the district court inflated the amount of the loss which resulted in a higher offense level and longer sentence.

A district court's finding of amount of loss generally is a factual question reviewed for clear error. See United States v. Chatterji, 46 F.3d 1336, 1340 (4th Cir. 1995). Each case is decided on its own facts. See United States v. Mancuso, 42 F.3d 836, 849 (4th Cir. 1994). Here, the evidence at the sentencing hearing disclosed that Ndibe fraudently applied for music and book club memberships, received the merchandise, and shared in the profits of the subsequent sales. We

3

find that the court's valuation of the items at $15 each was reasonable given that the average retail book price was $15.03 and the compact discs cost regular club members $15 to $15.98. See United States v. Ellerbee, 73 F.3d 105, 108-09 (6th Cir. 1996) (holding that the district court's use of retail value of compact disks in computing amount of loss not clearly erroneous).**2** The district court therefore did not clearly err in determining that the loss was in excess of $40,000 and therefore that Ndibe's offense level should be increased by five. See Chatterji, 46 F.3d at 1340; USSG § 2F1.1 comment. (n.8) ("For the purposes of subsection (b)(1), the loss need not be determined with precision.").

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

**2** Ndibe relies on Judge Kennedy's concurrence in Ellerbee to support his contention that the amount actually charged by the music and book clubs should be the value used to establish the amount of the loss. See Ellerbee, 73 F.3d at 109-10 (Kennedy, J., concurring). We agree with the majority in Ellerbee that "the fact that [using such amount] may be the more accurate of the two methods does not make the district court's determination clearly erroneous." Id. at 109.

4